**No. 69364.**—D. P. Harris Hardware & Mfg. Co., Inc. *v.* United States, protest 58/22330 (New York).

FORD, Judge: The basic question presented by the above-enumerated protest is the proper classification and duty assessment of certain chains in rolls, imported from France.

The merchandise as described on the commercial invoice accompanying the entry consists of "115,000 Feet of YELLOREX Chains, ½″ x ⅛″, in rolls of 500 feet with 140 snap-on connecting links per roll." Said merchandise was classified by the collector of customs as chains of iron or steel, used for the transmission of power, of not more than 2-inch pitch and containing more than three parts per pitch, in paragraph 329 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 329), as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877, and was subjected to duty at the rate of 25 per centum ad volorem, which rate is applicable to said chains when valued under 40 cents per pound.

By timely protest filed against this action of the collector, plaintiff herein originally claimed "that said merchandise is properly dutiable at 2¢ per lb. under Par. 329 as modified," evidently within the provision of said paragraph 329, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides for chain and chains of all kinds, made of iron or steel, less than five-sixteenths of 1 inch in diameter.

Since this claim was not pursued by plaintiff, it is deemed to have been abandoned and will be dismissed.

At the call of this case for hearing, however, plaintiff moved to amend its protest alleging that although the importation was properly classified by the collector of customs as iron chains used for the transmission of power in paragraph 329 of the Tariff Act of 1930, as modified by the Japanese protocol, *supra*, it was subject to duty at only 12½ per centum ad valorem by reason of the fact the chain was valued over 40 cents per pound. Alternatively, it was claimed

that the appraisement was invalid because of failure to give notice thereof in accordance with the provisions of section 501 of the Tariff Act of 1930 (19 U.S.C. § 1501), as amended, with the result that the protest should be dismissed and the case remanded for a determination of value in accordance with the provisions of section 2636 of title 28, United States Code.

Section 514 of the Tariff Act of 1930 (19 U.S.C. § 1514) provides that a protest will lie against "all decisions of the collector * * * as to the rate and amount of duties chargeable * * *." It is in that light that we view the evidence offered herein by plaintiff, consisting of the testimony of one witness and the introduction in evidence, without being marked, of the entry and accompanying papers, a customs laboratory report, and a letter, dated May 14, 1957, addressed to the Commissioner of Customs, Washington, D.C., by the assistant collector of customs at the port of New York.

Plaintiff's witness was Charles K. Krasa, import manager for the plaintiff company, with which he had been associated since 1950. He was familiar with the importation at bar. Through his testimony, the following facts were developed. From the importation in issue, after the protective lubricant had been removed therefrom, Krasa had cut a sample "about 25 feet" in length. Of that sample, he subsequently submitted to the customs authorities (evidently the office of the collector of customs at the port of New York) "a section of 20 feet in a continuous length," together with two of the connecting links. Said section of chain and the links ultimately were sent to the United States Customs Laboratory at New York. The report of said agency states as follows:

The entire chain weighs 3 lbs. 13½ oz. av.
One link weighs 0.143 oz. av.

A computation of the weight of the instant shipment on the basis of the United States Customs Laboratory report would result in a total weight of 22,389 pounds, which plaintiff would be willing to agree was the net weight of the shipment.

It is plaintiff's contention that the weights shown on the invoice accompanying the entry were incorrect and that, if the correct weight had been used and the correct value, the merchandise would be valued at 40 cents or more per pound and, hence, be subject to duty at the rate of only 12½ per centum ad valorem.

On the matter of the correct weight of the importation which plaintiff seeks to establish by the United States Customs Laboratory report referred to above, the Government raises objections on the ground that it does not feel that a 20-foot length of chain was sufficient to arrive at a total weight for a roll of chains, much less 230 rolls thereof, inasmuch as the measurement of the piece of chain submitted is not exactly 20 feet and that even a slight variance from 20 feet would make a great difference in the total weight when 115,000 feet of chains are involved.

It is the opinion of the court that the Government's position in this regard is well taken. We might also comment on the fact that the report of the United States Customs Laboratory, to which reference has been made, *supra*, mentions "The entire chain weighs 3 lbs. 13½ oz. av. * * *," but at no point does it state either generally or specifically the length of the "entire chain" referred to which was being weighed.

In the course of his official function in classifying the merchandise at bar and imposing the proper rate of duty thereto applicable, the collector of customs relied on the net weight of the imported chain provided by the importer in its entry and accompanying papers.

Witness Krasa also testified to the fact that at no time did he or his company receive a notice of appraisement in connection with the importation in controversy.

A perusal of customs Form 6417, Summary of Entered Values, accompanying the entry papers herein, discloses that the appraiser of merchandise in his appraisal of the instant importation agreed with the entered value represented by the information set forth in the invoice accompanying the entry and so appraised the importation. By virtue of that fact, it was not incumbent upon the collector to send a notice of appraisement to the importer. The applicable statutory provision is section 501 of the Tariff Act of 1930 (19 U.S.C. § 1501), as amended, which, so far as pertinent here, reads as follows:

The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the notice. * * *

None of the contingencies provided for in said section 501 occurred in connection with the importation at bar.

In determining the rate of duty and the computation thereof, the collector of customs was guided by section 503 of the Tariff Act of 1930 (19 U.S.C. § 1503), as amended, which states—

(a) General rule.

Except as provided in section 1562 of this title (relating to withdrawal from manipulating warehouses), the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the final appraised value.

(b) Basis of rate.

For the purpose of determining the rate of duty to be assessed upon any merchandise when the rate is based upon or regulated in any manner by the value of the merchandise, the final appraised value shall (except as provided in section 1562 of this title) be taken to be the value of the merchandise.

Subsequent to liquidation, it was brought to the attention of the customs authorities by the plaintiff that in appraising the merchandise the invoice unit price rather than the home market price, the latter being higher than the entered and appraised value, was adopted. That fact, however, does not alter the situation here presented since a computation of customs duty even on the basis of such higher home market price and predicated on the weight provided by plaintiff at the time of entry of the merchandise would not result in bringing the importation within the 12½ per centum ad valorem rate of duty in paragraph 329 of the Tariff Act of 1930, as modified, *supra*, sought by plaintiff.

Adverting to section 501 of said act, as amended, *supra*, the provision is therein contained that—

* * * The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court.

No appeal for a reappraisement was filed in the instant case pursuant to the foregoing provisions of section 501 of the tariff act.

In the light of all the evidence presented, and after reviewing the record before us, we consider as untenable the claim of plaintiff that the importation

at bar was subject to duty at only 12½ per centum ad valorem in paragraph 329 of the Tariff Act of 1930, as modified by the Japanese protocol, *supra*, by reason of the fact that the chain was valued at over 40 cents per pound and, alternatively, that "the appraisement was void and the liquidation invalid because there was no notice of appraisement by the Collector." Accordingly, said claim in the protest is overruled.

Judgment will issue in accordance with the views above expressed.